**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PC RE VENTURE, LLC, SOUTHERN TOWERS, LLC, AND MIDWEST TOWERS INVESTMENT, LLC** | * | **CIVIL ACTION NO. 26-682** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | * | **MAGISTRATE JUDGE JANIS VAN MEERVELD** |
| **HERTZ GROUP REALTY TRUST, INC. F/K/A HERTZ GROUP OP LIMITED, LLC, ET AL.** | * | |
| | * | |

* * * * * * *

**ORDER & REASONS**

Before the Court is a Motion for Remand filed by Plaintiffs PC RE Venture, LLC, Southern Towers, LLC ("Southern Towers"), and Midwest Towers Investment, LLC ("Midwest Towers") (collectively, "Plaintiffs"). R. Doc. 23. Defendants Hertz Group Realty Trust, Inc. (erroneously named as "Hertz Group Realty Trust, Inc. FKA Hertz Group OP Limited, LLC"); Hertz Investment Group, LLC; Hertz Group REIT Advisor, LLC; Hertz Properties Group, LLC; Hertz Properties Group, LTD. (BVI), (erroneously named as "Hertz Properties Group, LTD. (BVI)" or "Hertz Properties Group, LTD."); Platinum Cleaning of Indianapolis, LLC d/b/a Platinum Cleaning, LLC; Edifice Protection Group, Inc.; Resilient Flooring, LLC; William "Zev" Hertz; Sarah a/k/a Sandy Hertz Gordon; Yitzchak a/k/a Isaac Hertz; and ISW Holdings, LLC (collectively, the "Hertz Defendants") oppose the Motion. R. Doc. 57. Plaintiffs replied. R. Doc 58. After considering the record, briefing, and applicable law, the Court **GRANTS** Plaintiffs' Motion to Remand.

## I. BACKGROUND & PROCEDURAL HISTORY

This case arises out of the alleged mismanagement of a partnership due to self-dealing and other misconduct. Plaintiffs are three limited liability companies that are limited partners in the Hertz Group Realty Operating Partnership, L.P. (the "Partnership"). Defendants are various

corporate entities with citizenship in multiple states including California. R. Doc. 1 at 7. Plaintiffs aver the Defendants engaged in varying degrees of mismanagement and self-dealing in forming and managing the Partnership. *Id.* at 15–33.

Plaintiffs filed the instant action on February 11, 2026, in the Civil District Court for the Parish of Orleans under variety of state-law theories. *Id.* at 34–49. Defendants removed this action on April 1, 2026, on the belief that complete diversity of citizenship existed. R. Doc. 1.[1] Plaintiffs subsequently moved to remand, representing that complete diversity does not exist because Christine Francis, an alleged member of Francis Family Investments, LLC, which is an alleged member of two Plaintiffs, Southwest Towers and Midwest Towers, shares California citizenship with several Defendants. R. Doc. 23. The Court permitted jurisdictional discovery to allow the parties to investigate Francis's citizenship. R. Doc. 38. Plaintiff subsequently filed a "Re-urged Motion to Remand," Defendants filed an opposition, R. Doc. 57, and Plaintiffs replied, R. Doc. 58.

## II. PRESENT MOTION

Plaintiffs move to remand this action on the ground that complete diversity of citizenship is absent because Francis shared California citizenship with several Defendants on the date this action was filed in state court. R. Doc. 51-2 at 1. Plaintiffs point to various indicia of Francis's California citizenship, including home ownership, location of personal possessions, government identification, social ties, and self-representation. *Id.* at 3–5. Plaintiffs further contend that, as a matter of law, Francis's citizenship on the date of removal is inconsequential; complete diversity

[1] Plaintiffs failed to include Francis's California citizenship in their state court petition and represented themselves only as citizens of Louisiana and South Dakota. R. Doc. 1-1 at 8–9. While this representation is an evidentiary admission, it is non-binding and will not dictate the outcome when the Court is otherwise convinced that jurisdiction is absent. *See Rx Sols., Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 445 (5th Cir. 2026).

purposes must exist at the time of filing. *Id.* at 12. Plaintiffs maintain, however, that if the Court assesses diversity at the removal date, Francis remained a California citizen on that date and complete diversity is absent. *Id.* at 5.

Defendants' response is three-fold. First, Defendants contend that Francis became a Louisiana citizen on the filing date because she was physically present in the state with an intent to remain indefinitely. R. Doc. 57 at 21–23. Second, Defendants invoke the "voluntary-involuntary" exception to argue that even if parties were not completely diverse on filing date, the Court can still exercise diversity jurisdiction if a plaintiff's post-filing change of citizenship creates complete diversity before removal. *Id.* at 9. Third, Defendants contend that, in the event Francis was not a Louisiana citizen on the filing date, she became one by April 1, 2026, the date of removal. *Id.* at 11.

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, this Court "may not exercise that jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). The removing party bears the burden of proving that a district court has jurisdiction over a matter. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Because removal jurisdiction "raises significant federalism concerns," *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988), it is strictly construed and doubts regarding removal jurisdiction should be resolved in favor of remand, *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Accordingly, the Court "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor

of remand to state court." *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

A defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the issue. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over cases involving complete diversity of citizenship among the parties where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Complete diversity exists when no plaintiff shares a state of citizenship with any defendant. *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). When any party is a limited liability company, courts determine its citizenship by looking to "the citizenship of all of its members," *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), which can be natural persons and other entities, including other limited liability companies.

For the purposes of diversity jurisdiction, citizenship of a natural person is determined by an individual's domicile. *Preston v. Tenent Healthsystem Mem'l Med. Ctr., Inc*., 485 F.3d 793, 797 (5th Cir. 2007). "A person's state of domicile presumptively continues unless rebutted with sufficient evidence of change." *Id.* at 797–98. A change in domicile requires physical presence in the new location coupled with an intent to remain there indefinitely. *Id.* at 798. The burden rests with the party seeking to show a change in domicile to come forward with sufficient evidence of that change. *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996). A number of factors drive the "intent to remain" analysis, including "where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* at 251.

## IV. DISCUSSION

Two issues are before the Court. First, whether this court may exercise diversity jurisdiction when a plaintiff's post-filing change of citizenship creates complete diversity prior removal. Second, Francis's citizenship on the filing date, February 11, 2026.

### 1. Complete diversity must exist on the date of filing.

To remove a case to federal court on diversity grounds, complete diversity must exist at moment of filing. That is the general rule. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." (internal quotation marks omitted)); *see also Coury*, 85 F.3d at 249; *Ashford v. Aeroframe Servs., L.L.C.,* 907 F.3d 385, 386 (5th Cir. 2018). Defendants invoke an exception to this rule known as the "voluntary-involuntary exception," which permits removal when a plaintiff's voluntary action in state court creates complete diversity. *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019).[2] Courts have recognized this exception in certain, limited circumstances; most notably, when a plaintiff voluntarily dismisses a diversity-destroying defendant. *See Powers v. Chesapeake & O. Ry.*, 169 U.S. 92 (1898); *Am. Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 316 (1915). No higher court has extended this exception to situations where a plaintiff's post-filing change of citizenship creates diversity. To the contrary, the Supreme Court has expressly indicated that this exception does not apply in such circumstances. In *Grupo Dataflux v. Atlas Glob. Group Limited*, the diversity-destroying members of the plaintiff-limited partnership left the partnership after the case was filed in federal court. 541

---

[2] The cases Defendants cite in support of their argument either predated *Grupo*, failed to acknowledged *Grupo*, or concerned a different application of the voluntary-involuntary exception. *DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir. 1979); *Tribe Collective, LLC v. Kinsale Ins. Co.*, No. CIV-22-00788-PRW, 2023 WL 4401102 (W.D. Okla. July 7, 2023); *Flores v. Nat'l Van Lines, Inc., et al.*, No. EP-17-CV-00003-KC, 2017 WL 10765311 (W.D. Tex. May 12, 2017); *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117 (D. Minn. 1999); *Pepsico, Inc. v. Wendy's Intern., Inc.,* 118 F.R.D. 38 (S.D. N.Y. 1987); *Growth Realty Companies v. Burnac Mortg. Investors, Ltd.*, 474 F. Supp. 991 (D.P.R. 1979); *Hoyt*, 927 F.3d. As such, the Court finds them unpersuasive.

U.S. at 568–69. The question presented was "whether a post-filing change in citizenship c[ould] cure a lack of subject matter jurisdiction that existed at the time of filing." *Id.* at 568. Answering that question in the negative, the Court reaffirmed the longstanding principle that "'[w]here there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." *Id.* at 574. Because the "[t]he purported cure" to the jurisdictional defect "arose not for a change in the parties to the action, but from a change in the citizenship of a continuing party," federal subject matter jurisdiction did not exist. *Id.* at 575. The import of *Grupo* is that the voluntary-involuntary exception is not triggered by a change in the citizenship of a party to the action. In such circumstances, the general rule holds that diversity of citizenship must exist at the time of filing. While *Grupo* concerned a case originating in federal court, the language of the opinion does not limit its application, and Defendants have offered no reason why it would not apply in the removal context. Accordingly, the Court follows *Grupo's* guidance and assesses citizenship solely at the time of filing.

**2. Christine Francis was a California citizen on the filing date.**

Plaintiffs filed this action in state court on February 11, 2026. R. Doc. 1. Defendants argue the Francis was a Louisiana citizen on this date, R. Doc. 57 at 21–23; Plaintiffs maintain she was a California citizen. R. Doc. 51-2 at 1. Francis's citizenship is determined by her state of domicile, which, in turn, depends on physical presence and intent to remain. The relevant facts to this analysis are as follows:

Francis was born and raised in New Orleans, Louisiana. R. Doc. 51-3 at 2. She left Louisiana in 1994 and has lived at various locations throughout the United States since then. *Id.* at 52. Franics moved to California in December 2013, where she resided continuously until spring 2026. *Id.* at 47. Neither party disputes that Francis was a California domiciliary during this period.

The disagreement instead centers on whether Francis became a Louisiana domiciliary on February 11, 2026.

In later half of 2025, Francis began contemplating a move to Louisiana. She contacted a moving company for cost estimate of moving her belongings to Louisiana and listed her California home for sale. R. Doc. 57-1 at 23. In January 2026, Francis purchased health insurance with Blue Cross Blue Shield Louisiana and registered her newly formed consulting business with the State of Louisiana. R. Doc. 57-1 at 9, 31.

On February 11, 2026, Francis traveled to Louisiana with a return ticket to California. R. Doc. 51-3 at 44. On that date, Francis still owned her California home, paid utilities on that home, and kept her belongings in that home. *Id.* at 47–49. Francis's vehicle was registered in California, and she held a California driver's license. *Id.* at 30–31; R. Doc. 51-6 at 1–2. She had not purchased property or rented accommodation in Louisiana. R. Doc. 51-3 at 77. In her deposition, Francis explained that she traveled to New Orleans on February 11 to attend Mardi Gras with her family. *Id.* at 43–44. Francis's father passed away during her visit, and she extended her trip to assist with her father's affairs and attend his funeral. *Id.* at 44. Francis flew back to California on March 9, 2026. *Id.* at 4.

After returning to California, Franics continued preparing for her move. In late March, she contacted her moving company to confirm her intended destination was New Orleans. R. Doc. 57-1 at 33. The moving company loaded her belongings on or about March 27, 2026. *Id*. On April 1, 2026, Francis flew to New Orleans on a one-way ticket. R. Doc. 51-3 at 32. Francis's belongings arrived a day later. *Id.* at 31. Francis testified that at this time she did not intend on returning to California. *Id.* at 32. She has resided in Louisiana since April 1. R. Doc. 57-1 a 38.

After evaluating the record evidence, the Court's view is that Francis remained a California domiciliary on February 1, 2026, the date of filing in state court. Plaintiffs explained that Francis's February trip to Louisiana was simply a vacation to attend Mardi Gras. Objective evidence supports this characterization: Francis traveled on a return ticket, intended on staying for only a few weeks, continued to own and reside in her California home with her belongings, retained a California driver's license and vehicle registration, and had not purchased property in Louisiana or arranged long-term housing. Regardless of her future plans, Francis's February 11 visit to Louisiana was intended to be short trip, not an indefinite relocation. Because Francis lacked requisite intent to remain, she did not become a Louisiana domiciliary on that date.

## V. CONCLUSION

Francis was a California citizen on the date of filing. Francis shared this citizenship with several Defendants, rendering complete diversity absent. Because there is no basis of subject matter jurisdiction;

**IT IS ORDERED** that Plaintiffs' Motion to Remand, R. Docs. 23, 51, is hereby **GRANTED**. The above-captioned action is hereby **REMANDED** to the Civil District Court for the Parish of Orleans.

**IT IS FURTHER ORDERED** that Defendants' pending Motions to Dismiss, R. Docs. 21, 36, are hereby **DENIED** as *moot*, and the oral argument presently set on these Motions is hereby **CANCELLED.**

New Orleans, Louisiana, this 11th day of September, 2026.

Eldon E. Fallon

THE HONORABLE ELDON E. FALLON